**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3927
_____

MARY K. PRIMROSE,
                              Appellant
v.

TRENT MELLOTT; TOWNSHIP OF UPPER ALLEN
_____

No. 12-4037
_____

MARY K. PRIMROSE

v.

TRENT MELLOTT; TOWNSHIP OF UPPER ALLEN,
                              Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 1-11-cv-00835)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2013
_____

Before: GREENAWAY, JR., SHWARTZ and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 24, 2013)

_____

OPINION
_____

BARRY, *Circuit Judge.*

Mary Primrose instituted a civil rights action against Trent Mellott, pursuant to 42 U.S.C. § 1983, alleging that Mellott, a police officer employed by the Township of Upper Allen, violated her First and Fourth Amendment rights by instructing her to remain in her apartment and issuing her a summons for disorderly conduct following a confrontation with her neighbor, Dixie Anderson. Mellott won following a jury trial, and the District Court entered judgment in his favor and against Primrose. Primrose appeals, arguing that the Court erred in not entering judgment as a matter of law on her First Amendment claim and erroneously charged the jury on the elements of both of her claims. We will affirm.

## I.

This action arises out of a May 4, 2009 dispute over parking between Primrose and Anderson, residents of the same apartment complex, a dispute that occurred in front of Tammy Zechman, an employee of the apartment complex. At some point during the dispute, Primrose called Anderson either a "noisy bitch" or a "nosy bitch." Anderson called the police, and, a short time thereafter, Mellott arrived and took statements from Primrose, Anderson, and Zechman. Mellott eventually issued Primrose a summons for disorderly conduct, in violation of 18 Pa. Cons. Stat. Ann. § 5503(a)(3), which makes it a

2

crime to "use[] obscene language, or make[] an obscene gesture" with the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Primrose was found not guilty following a trial before a magistrate judge, who found reasonable doubt as to whether Primrose used the word "bitch" or the word "bitty." A. 330-31.

Primrose filed this action alleging that Mellott falsely arrested her without probable cause in violation of the Fourth Amendment and that his actions violated her First Amendment free speech rights. The case was tried before a jury. Primrose testified that she had received a ticket for parking in a handicap spot outside of her apartment complex. At the office of the complex, Primrose confronted Anderson and asked her whether she had reported Primrose to the police. According to Primrose, Anderson became agitated, screaming and yelling, before Primrose called her a "nosey old biddy." A. 64. Anderson then threatened to call the police and Primrose returned to her apartment. At some point, Mellott arrived on the scene, took Primrose's statement, and told her to wait in her apartment while he completed his investigation. Mellott later returned and issued her a summons for disorderly conduct.

Anderson and Zechman told a different story. Anderson testified that Primrose came into the apartment complex office "screaming," called Anderson a "nosey bitch," pointed her finger in Anderson's face, and came very close to Anderson's face. Despite being asked to leave by Anderson and Zechman, Primrose continued to "rant." Zechman testified that Primrose threatened Anderson by angrily swearing and "g[etting] in

3

[Anderson's] face." Zechman also testified that she felt threatened. Both Anderson and Zechman related their stories to Mellott. Mellott testified that he took statements from Primrose, Anderson and Zechman, which largely comported with their respective testimony at trial. He stated that he believed he had probable cause to charge Primrose with violating several sections of the disorderly conduct statute, but found it sufficient to issue her a summons for using obscene language in violation of § 5503(a)(3).

At the close of evidence, Mellott filed a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), which the District Court denied. Primrose moved for a directed verdict on her First Amendment count which the Court also denied. The jury returned a verdict in favor of Mellott on both counts. Primrose now appeals.[1]

## II.

Primrose argues, first, that the District Court erred in failing to enter judgment as a matter of law in her favor with respect to her claim that Mellott violated her First Amendment rights by issuing her a summons because she called her neighbor a "bitch." She contends that Mellott's admission at trial that he issued her the summons because of her use of obscene language entitled her to relief as a matter of law. While Primrose filed a motion for a directed verdict following the close of evidence, she failed to renew her motion for judgment pursuant to Rule 50(b). Because she failed to renew her Rule 50(b) motion, she has forfeited this claim on appeal. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) (noting that Supreme Court precedents

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 18 U.S.C. § 1291.

"unequivocally establish that the precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to judgment as a matter of law—cannot be appealed unless that motion is renewed pursuant to Rule 50(b)").[2]

Primrose also contends that the District Court erroneously instructed the jury with respect to her First and Fourth Amendment claims. The Court charged as follows:

> To prevail on [a First Amendment retaliation claim], Mary K. Primrose must prove . . . : First, that plaintiff engaged in constitutionally protected conduct; second, plaintiff was subjected to retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights by Defendant Mellott; and, third, that there was a causal connection between defendant's alleged retaliatory activity and plaintiff's constitutionally protected conduct.

A. 32. The Court went on to explain that Primrose's speech during her encounter with Anderson "was protected under the First Amendment," and that to establish causation, Primrose must "prove that her protected speech was a substantial or motivating factor in the alleged retaliatory action [issuing the summons] by defendant." *Id*. These

---

[2] In any event, the jury found that the Mellott's action was supported by probable cause. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court held that a First Amendment retaliatory *prosecution* claim could not stand when probable cause supporting the underlying criminal charge has been found. *Id.* at 252. The Court considered but declined to reach whether *Hartman*'s logic also applied to First Amendment retaliatory *arrest* claims in *Reichle v. Howards*, 132 S. Ct. 2088 (2012). The Court did, however, hold that it was not clearly established that "an arrest supported by probable cause could give rise to a First Amendment violation," and that the defendant police officers were therefore entitled to qualified immunity—despite pre-*Hartman* Tenth Circuit precedent that probable cause did not foreclose a retaliatory arrest claim. *Id.* at 2097. We have not decided whether the logic of *Hartman* applies to retaliatory arrest claims, and so it appears that Mellott would be entitled to qualified immunity on the First Amendment claim. *See Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (holding that qualified immunity applies where the violated right is not clearly established at an appropriate level of specificity).

5

instructions comport with well-established case law on First Amendment retaliation claims. *See, e.g.*, *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).

Primrose argues, however, that it was error for the District Court to use the word "retaliate" and frame the action as a "retaliation claim," because her cause of action alleges a "direct violation" of her First Amendment rights. She claims that she was arrested based on her protected speech uttered to Anderson, not to Mellott, and that Mellott cannot "retaliate" for conduct directed at Anderson. Primrose, however, fails to cite any authority recognizing a "direct violation" First Amendment arrest claim rather than a "retaliatory arrest" claim. *See generally Reichle v. Howards*, 132 S. Ct. 2088 (2012) (analyzing First Amendment claim under retaliatory arrest framework where plaintiff alleged officers arrested plaintiff because plaintiff criticized the Vice President). More importantly, Primrose fails to establish that use of the word "retaliatory" constitutes reversible error because it failed to "fairly and adequately present the issues in the case without confusing or misleading the jury." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009) (internal quotation marks omitted). During the charge conference, Primrose requested that the second element of her First Amendment claim state that "Defendant Mellott's conduct must be sufficient to deter a person of ordinary firmness from exercising her constitutional rights," S.A. 59, tracking essentially the same language as the instruction given by the Court. Use of the single word "retaliation," particularly in light of the further explanation by the Court, could not have "confus[ed] or

6

misle[d] the jury."[3] *Donlin*, 581 F.3d at 79.

The District Court's instructions on the Fourth Amendment claim were also proper. As an initial matter, Primrose requested the same jury instructions that were given by the Court. A. 257-62; S.A. 58-60. We therefore review for plain error. *See Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005). Primrose suggests that the Court should have directed the jury to find that there was no probable cause to arrest Primrose, because, she contends, under Pennsylvania law, a police officer does not have authority to arrest a person for a "summary offense" that takes place out of the presence of a police officer. Of course, that is not the test we apply for finding probable cause under the Fourth Amendment when evaluating a false arrest claim. "A significant body of caselaw makes clear . . . why a Fourth Amendment determination cannot turn on the exigencies of the law of a particular state or territory . . . ." *United States v. Laville*, 480 F.3d 187, 193 (3d Cir. 2007); *see also Virginia v. Moore*, 553 U.S. 164, 176 (2008) (observing in context of warrantless arrests for crimes committed in the presence of an arresting officer that "while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections"). Moreover, the test for probable cause is an objective one and "need only

---

[3] For the first time on appeal, Primrose also raises several errors in the instructions regarding her First Amendment claim—that the jury should have been directed to find that Primrose was in fact "deterred," that the Court erred in permitting the jury to consider Mellott's antagonism or change in demeanor, and that the instructions misrepresented the facts of the case. When a party fails to object or submit competing instructions, we review for plain error. Fed. R. Civ. P. 51(d)(2). The disputed jury instructions comported with the current state of the law, and, in any event, did not affect Primrose's substantial rights.

exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). Accordingly, the Court's instructions with respect to Primrose's Fourth Amendment claim were proper. [4]

### III.

For the reasons set forth above, we will affirm the order of the District Court.

---

[4] Mellott cross-appeals the denials of his motion for summary judgment and his motion for a directed verdict. Because we will affirm the final order in his favor, we need not reach the issue of whether he was entitled to prevail as a matter of law at an earlier point.