**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3063
_____

T. LEVY ASSOCIATES, INC.

v.

MICHAEL R. KAPLAN;
NINA KAPLAN; BLC BEAUTY INC;
DEYVID DEMELO

Michael R. Kaplan;
Nina Kaplan;
BLC Beauty, Inc.,
Appellants

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:16-cv-04929)
District Judge: Hon. Mark A. Kearney
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 4, 2018
_____

Before: SHWARTZ, SCIRICA, and ROTH, <u>Circuit Judges</u>.
(Filed: November 15, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Defendants Michael and Nina Kaplan ("Mr. and Mrs. Kaplan") and Mrs. Kaplan's

company BLC Beauty, Inc. (collectively, "the Kaplans") appeal from the District Court's

orders partially denying their motion for summary judgment and denying their post-trial

motion following a jury verdict in favor of Plaintiff T. Levy Associates, Inc. ("TLA").

For the following reasons, we will affirm.

I[1]

A

Ted Levy ("Mr. Levy") is the primary owner of TLA, a cosmetics and beauty

wholesale supplier and retailer.  Mr. Kaplan began working for TLA in the 1980s, and

later married Mr. Levy's daughter, Nina.  By 2008, Mr. Kaplan was the Executive Vice

President of TLA and "ran everything."  App. 437.  In 2010, Mrs. Kaplan started BLC

Beauty, a high-end beauty and cosmetic retailer.  Beginning in 2015, Mr. Levy engaged a

business broker to help sell TLA and a forensic accountant to analyze TLA's finances.

He learned of improper financial dealings that he believed reduced TLA's value and

benefitted BLC Beauty.  Mr. Levy fired Mr. Kaplan in March 2016.

---

[1] Because the Kaplans appeal summary judgment and new trial rulings, these facts
are recounted in the light most favorable to TLA, the non-movant.  Frank C. Pollara Grp.,
LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 184 n.9 (3d Cir. 2015) (new trial
motion); McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005) (summary judgment
motion); see also Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 (3d Cir. 2009) (motion
for judgment as a matter of law).

B

TLA filed a complaint against the Kaplans alleging violations of federal law, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), the Lanham Act, 15 U.S.C. § 1125(A)(1)(B), the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030, and Pennsylvania law, including conversion, breach of fiduciary duty, tortious interference with contractual relationships, and misappropriation of trade secrets.[2]

Following discovery, the Kaplans moved for summary judgment. The District Court granted the Kaplans' motion as to the Lanham Act and CFAA claims but denied the motion as to the RICO, tortious interference with contractual relations, and conversion claims.

During the four-day jury trial, evidence was presented showing that the Kaplans used TLA funds to pay their personal and business debts and expenses and to make business purchases for BLC Beauty; that Mr. Kaplan had been working for the benefit of BLC Beauty while employed by TLA; that Mr. Kaplan diverted wholesale business from TLA to BLC Beauty;[3] and that BLC Beauty owed rent to TLA for retail space.

---

[2] The complaint also included claims against Deyvid Demelo. The Court granted summary judgment in favor of Demelo on all claims against him. He is not involved in this appeal.

[3] Before Mr. Kaplan's March 2016 termination, TLA's eight largest wholesale customers accounted for approximately 75% of TLA's wholesale business, totaling $4.75 million in 2014 and $3.5 million in 2015. App. 1208, 1843. TLA's wholesale business dropped to less than $500,000 for the first half of 2016. App. 1208, 1843. TLA's expert projected that TLA's lost wholesale business for 2016 and 2017 would exceed $4 million and lost profits would total over $200,000.

3

The jury returned verdicts against (1) Mr. Kaplan for violation of RICO, conversion, breach of fiduciary duty, and tortious interference with contractual relations, (2) Mrs. Kaplan for violation of RICO and conversion, and (3) BLC Beauty for violation of RICO, conversion, and tortious interference with contractual relations.

The Kaplans moved for post-trial relief arguing: (1) the judgment as to the RICO and tortious interference claims is not supported by sufficient evidence; and (2) a new trial is necessary to correct clear errors of law (a) in jury instructions and (b) because the jury verdict on misappropriation of trade secrets and tortious interference is inconsistent and against the weight of the evidence.[4] The District Court denied the Kaplans' post-trial motion. The Kaplans appeal.

## II[5]

On appeal, the Kaplans challenge the District Court's denials of their (1) motion for summary judgment as to the RICO claim, (2) motion for judgment as a matter of law as to the RICO and tortious interference claims, and (3) motion for a new trial or, in the alternative, an amended judgment based on allegedly defective jury instructions, inconsistent jury verdicts, and verdicts against the weight of the evidence.

---

[4] The Kaplans also argued that the damages were unreasonable but they do not raise that claim on appeal.

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. To the extent we have jurisdiction, it is pursuant to 28 U.S.C. § 1291, see infra sections II.A and B.

4

## A

We first address the Kaplans' appeal of the order denying their summary judgment motion as to the RICO claim. "[W]hen . . . a summary judgment motion does not present a pure issue of law and the issues it does present have not been raised and renewed by proper motions for judgment as a matter of law under [Federal Rule of Civil Procedure] 50, those issues are not reviewable on appeal." Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 185 (3d Cir. 2015). "There is an exception to this general rule, however, for an order denying summary judgment on 'a purely legal issue' capable of resolution 'with reference only to undisputed facts.'" Id. (citations omitted). "Cases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." Ortiz v. Jordan, 562 U.S. 180, 189 (2011) (citations omitted).

The Kaplans did not raise a purely legal issue in their summary judgment argument. Instead, they disputed that the alleged illegal acts occurred over a sufficient period of time to meet RICO's continuity requirement. Because this is an argument about the facts, and it was not renewed in a Rule 50 motion, we lack jurisdiction to review the Court's order denying the Kaplans' summary judgment motion as to the RICO claim.

## B

Because the Kaplans failed to comply with Rule 50, we also cannot review their argument that the District Court erred in denying them judgment as a matter of law based on their assertion that TLA offered insufficient evidence to support its RICO and tortious

interference claims.  Under Rule 50(a), "a party [must] challenge the sufficiency of the evidence prior to submission of the case to the jury . . . ."  Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399 (2006).  Pursuant to Rule 50(b), a party may "renew[] a sufficiency of the evidence challenge after the jury verdict and entry of judgment."  Id. at 400.  A party who does not challenge the sufficiency of the evidence "is not . . . entitled to have judgment entered in its favor notwithstanding an adverse verdict on the ground that there is insufficient evidence to support the verdict."  Greenleaf v. Garlock, Inc., 174 F.3d 352, 364 (3d Cir. 1999); accord Ortiz, 562 U.S. at 189 ("Absent [motions under Rule 50(a) and (b)] . . . an appellate court is 'powerless' to review the sufficiency of the evidence after trial." (citations omitted)).  As the Kaplans concede, they did not file a motion for judgment as a matter of law at the close of TLA's case or before the case was submitted to the jury.  As a result, they are not entitled to relief under Rule 50.  See Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991) (explaining that failure to file a Rule 50(a) motion "foreclose[s] any consideration of sufficiency questions . . .").

The Kaplans assert that they should be excused from this bar because the District Court's order concerning the presentation of witness testimony impeded their ability to make a Rule 50 motion.[6]  Even if there were an exception to the above rule, which there

---

[6] The District Court instructed the parties that each witness would be called one time.  When the Court explained that witnesses would appear only once, the Kaplans did not object.  Rather, they merely requested that the order of proof be explained to the jury, which the Court said it would do in its final instructions.  Because they did not object to this evidentiary ruling, they cannot raise it on appeal.  See Lloyd v. HOVENSA, LLC, 369 F.3d 263, 272-73 (3d Cir. 2004) (citations omitted).

is not, id., the Kaplans were not prevented from making a Rule 50 motion at the close of TLA's case, the close of the evidence, or after the verdict.

Accordingly, the Kaplans are procedurally barred from obtaining relief from the RICO and tortious interference verdicts based on alleged insufficient evidence under Rule 50.

C

We next examine the Kaplans' arguments that the District Court erred when it declined to order relief under Rule 59. A party who fails to move for judgment as a matter of law under Rule 50 can still petition the district court under Rule 59 to "critically evaluate the evidence and exercise its discretion in favor of a new trial because the probative evidence in their favor as contrasted with that opposed is overwhelming." Greenleaf, 174 F.3d at 365 (emphasis omitted). Such an argument may prevail where the party "had every reason to expect that the jury, if it understood and rationally applied the court's instructions, would decide that they had carried their burden of persuasion." Id.

The Kaplans argue that they are entitled to a new trial or, in the alternative, an amended verdict because (1) the jury instructions concerning tortious interference and defenses constituted "prejudicial error," Appellants' Br. at 31, and (2) the jury returned inconsistent verdicts on tortious interference and misappropriation of trade secrets claims

---

Even if we were to consider the Kaplans' argument that the District Court abused its discretion by only allowing witnesses to testify once, we would reject it. Federal Rule of Evidence 611(a)(2) allows district courts to control the presentation of witnesses to avoid wasting time. This was the precise reason for its directive and it was within the Court's discretion to impose.

and there is insufficient evidence to support the tortious interference verdict. These arguments lack merit.

## 1

With respect to the jury instructions, Federal Rule of Civil Procedure 51 provides that a party objecting to a jury instruction must raise the objection "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "As a general rule, a party who fails to either cogently raise a specific objection or state the grounds of the objection at trial waives related arguments on appeal." Lesende v. Borrero, 752 F.3d 324, 335 (3d Cir. 2014) (citations omitted). Where a party fails to preserve a challenge to a jury instruction, we can review only errors that affect "substantial rights" and our review is limited to plain error. Fed. R. Civ. P. 51(d)(2); Lesende, 752 F.3d at 336. "Under the discretionary plain error standard, we will reverse the trial court only where a plain error was fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." Franklin Prescriptions, Inc. v. N.Y. Times Co., 424 F.3d 336, 339 (3d Cir. 2005) (internal quotation marks omitted).

Even assuming the Kaplans preserved their argument that the District Court misstated that they must prove any defenses by a preponderance of the evidence when they "ha[ve] no burden . . .," Appellants' Br. at 28-29, the challenged jury instruction correctly articulated the burden for defenses. Compare App. 1669 (jury instruction on the preponderance of the evidence standard for defenses), with Green v. Parisi, 478 F.2d 313,

315 (3d Cir. 1973) (defendants asserting an affirmative defense must prove it "by a preponderance of the evidence"). Thus, there was no error.

Similarly, even assuming they did not waive challenges to the tortious interference instruction, which they in fact waived, the instruction was proper. First, the jury instructions the Kaplans proposed did not address the items they now claim were missing. See United States v. W. Indies Transp., Inc., 127 F.3d 299, 306 (3d Cir. 1997) ("Not only did defendants fail to request such an instruction, their proposed instruction was remarkably similar to that actually delivered by the district court. 'Thus, if there was any error at all, it was 'invited error' and cannot now be a basis for reversal.'" (citations omitted)). Second, the District Court's tortious interference instruction was correct. Compare App. 1565-66, with Acumed LLC v. Adv. Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

In short, the District Court did not abuse its discretion in denying the Kaplans a new trial based on the error-free jury instructions.

2

The District Court also correctly rejected the Kaplans' argument that the weight of the evidence does not support the tortious interference verdict. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Greenleaf, 174 F.3d at 366 (alterations in original) (citations omitted). On appeal, "[d]eferential review is appropriate when considering whether a verdict is against the weight of the evidence

because the district court was able to observe the witnesses and follow the trial in a way that we cannot replicate by reviewing a cold record." Id. (quotation marks and internal citations omitted). "To demonstrate that the District Court erred in declining to grant . . . a new trial because the verdict was against the weight of the evidence, [an appellant] must establish that (1) the jury reached an unreasonable result, and (2) the District Court abused its broad discretion in not setting the verdict aside." Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 386 (3d Cir. 2016), cert. denied sub nom., Stemtech Int'l, Inc. v. Leonard, 138 S. Ct. 975 (2018).

The District Court did not err. First, the fact that the jury found for TLA on its tortious interference claim but rejected its misappropriation of trade secrets claim does not undermine the sufficiency of the evidence supporting the tortious interference verdict. As the District Court correctly explained, the two claims "have different elements, and the jury could have reasonably found a failure of proof on the misappropriation claim but not the tortious interference claim." App. 13. Thus, the verdicts were not inconsistent and the Court appropriately denied Rule 59 relief.

Second, the District Court did not abuse its discretion when it determined that the weight of the evidence supports the tortious interference verdicts against Mr. Kaplan and BLC Beauty. To establish a claim of tortious interference, a party must prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective

contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed, 561 F.3d at 212. At trial, TLA presented evidence of each element of tortious interference. With respect to the first element, before Mr. Kaplan's termination, TLA's eight largest wholesale customers accounted for approximately 75% of the wholesale business, which totaled $4.75 million in 2014 and $3.5 million in 2015. With respect to the second element, Mr. Kaplan engaged in various purposeful actions while employed by TLA to shift this wholesale business from TLA to BLC Beauty and, once he was fired from TLA, he successfully secured TLA's major wholesale customers for BLC Beauty. With respect to the third element, TLA presented evidence that Mr. Kaplan's efforts for BLC Beauty were not justified because he was an officer of and owed a fiduciary duty to TLA, which meant he should not have been acting for the benefit of BLC Beauty. With respect to the fourth element, TLA's wholesale business dropped to less than half a million dollars for the first half of 2016, and TLA's expert projected that TLA's lost wholesale business from 2016 and 2017 would total over $4 million and that, during those two years, TLA would suffer lost profits exceeding $200,000. Given this evidence, it was not unreasonable for the jury to find that Mr. Kaplan and BLC Beauty tortiously interfered with TLA's wholesale relationships, see ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 268 (3d Cir. 2012) ("[A] jury verdict will not be overturned unless the record is critically deficient of that quantum of evidence from which a jury could have rationally

11

reached its verdict." (citations omitted)), and the District Court correctly denied the request for Rule 59 relief.[7]

III

For the foregoing reasons, we will affirm the District Court's orders denying the Kaplans' motion for summary judgment with respect to RICO and motion for post-trial relief.

---

[7] The Kaplans argue in a single sentence that "[t]he evidence presented by TLA at trial was grossly deficient and there was no legally sufficient basis for a reasonable juror to have found in favor of TLA on any of the causes presented to them at the trial." Appellants' Br. at 9.  This cursory sentence, with no further development, waives any argument concerning the sufficiency of the evidence supporting the remaining claims. See N. J. Media Grp. Inc., v. United States, 836 F.3d 421, 436 n.20 (3d Cir. 2016) (determining that argument is waived based on its "utterly undeveloped character.").